UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

JAMES M. MEADE                          Case No. 09-34865-dof
and CHRISTINE MEADE,                    Chapter 13 Proceeding
          Debtors.                      Hon. Daniel S. Opperman
_____/

OPINION REGARDING NINTH APPLICATION
FOR COMPENSATION OF COUNSEL FOR DEBTORS

Introduction

This case again finds its place on the Court's docket regarding the award and payment of fees

for Debtors' attorney. Previously, the Court considered eight applications for fees and awarded

$12,231.86 for services to July 14, 2014. The instant application seeks fees of $3,287.50 and costs

of $48.45. The Debtors and the Chapter 13 Trustee object to these fees. The Court heard arguments

on January 13, 2015, and took this matter under advisement. For the reasons stated in this Opinion,

the Court allows a portion of the requested fees and costs.

Findings of Fact

Although the Court incorporates previous findings of fact as stated in written and oral

Opinions issued in this case, a brief summary is needed. The Debtors filed this Chapter 13 case on

September 13, 2009. On that day, the 2016(b) Statement filed with the Court stated :

THIS FIRM RESERVES THE RIGHT TO FORGO THE "NO LOOK FEE" AND
INSTEAD FILE AN APPLICATION FOR FEES REPRESENTING TIME SPENT
ON ANY CHAPTER 13 CASE. THIS MAY RESULT IN TOTAL FEES AND
EXPENSES IN EXCESS OF THE ORIGINALLY QUOTED FEE. TIME SPENT
ON YOUR CASE WILL BE BILLED IN INCREMENTS OF 6 MINUTES AND
WILL INCLUDE ALL TIME SPENT BY ATTORNEYS AND STAFF IN THE
PROSECUTION OF YOUR CASE INCLUDING TRAVEL TIME AND
TELEPHONE CALLS. WORK PERFORMED AFTER CONFIRMATION WILL
BE BILLED AT AN HOURLY RATE AS APPLICABLE AND WILL BE PAID
THROUGH THE CHAPTER 13 PLAN UPON ENTRY OF AN ORDER

1

AWARDING FEES PURSUANT TO A FEE APPLICATION. CLIENT IS RESPONSIBLE FOR PAYMENT OF FEES IF NOT PAID IN FULL THROUGH THE PLAN.

The Debtors' Chapter 13 Plan was confirmed on December 3, 2009. The Order Confirming Plan awarded attorney fees of $3,500.00. All appeared normal for a Chapter 13 case, with various objections filed, negotiations, and resolution of differences.

After confirmation of their Chapter 13 Plan, the Debtors had a lot happening in their lives. Mr. Meade's income varied because of fluctuation of hours worked and Ms. Meade lost employment, received severance compensation, and regained employment. They also had to move out of their house and purchase another house. All of these events triggered the need for additional legal services, which Debtors' counsel performed and, via post-confirmation procedures, fees were awarded, which the Chapter 13 Trustee paid.

Counsel's Eighth Application for Fees drew an objection by the Trustee and the Court issued an Opinion regarding that Application on October 8, 2014. Later that month, the Court heard oral arguments regarding the Debtors' proposed post-confirmation modification of their Chapter 13 Plan, and the Trustee's objection to that proposal. On October 16, 2014, the Court sustained a portion of the Trustee's objections. In its ruling, the Court did not excuse all of the missed payments as requested by the Debtors, observed that the Chapter 13 Plan was due to be completed by December 2014, and allowed the Debtors additional time to cure the missed payments. The Debtors did not avail themselves of the allowed extra time and the Court granted the request to release the Debtors' employers from making further payments to the Trustee by way of an Order dated December 12, 2014.

Counsel's Ninth Application for Fees ("Application") was filed on December 3, 2014. The

Trustee objected to this Application on December 23, 2014. Pertinent portions of the Trustee's objection include:

> 6.   The Trustee objects to fee application in that the case has expired and there are insufficient funds on hand with which to pay counsel.
>
> . . .
>
> 9.   The services rendered in this fee application stem from July 15, 2014 through November 26, 2014. Just prior to the filing of the instant application the Debtors had filed a plan modification seeking a reduction in plan payments. Counsel should have taken into consideration when calculating the plan modification plan payment the sheer magnitude of the attorney's fees counsel knew or should have known were being generated. For this failure to adequately account for counsel's attorney fees within the plan modification, the attorney fees should be denied or at the very least reduced to the amount of funds available for distribution. Instead of assisting the debtors with the completion of their case the applicant has now hindered the debtors' discharge.
>
> 10.   The Trustee objects to paragraph 5 of the Application as it states that said services benefitted the estate by: "Continued to Distribute to Creditors and maintain plan feasibility." Trustee states that this is a misleading statement as this award disrupts the debtors' ability to obtain a discharge as the case has now expired and there are insufficient funds on hand with which to pay to counsel.
>
> 11.   The Trustee objects to paragraph 6 as also being misleading as it states "payments to creditors may be delayed." This is an untrue statement as there will be no more payments to creditors as the case has expired and that the plan is now in jeopardy of a dismissal as opposed to a successful discharge.
>
> 12.   Counsel is required to exercise "billing judgment" to determine whether counsel should bill for time allegedly expended in light of factors such as fairness to the debtors and creditors. Bankruptcy attorneys are not entitled to compensation merely because the time recorded was actually expended. *See In re Allied Computer Repair, Inc.,* 202 B.R. 877 (Bankr. W.D. Ky. 1996). The purpose of bankruptcy is not to serve as a fund for payment of professional fees. Instead, the purpose is to maximize the estate for distribution to creditors. As such, attorneys must use "billing judgment" and must make a good faith effort to eliminate unproductive time or to reduce hours on productive projects where the total amount billed would be unreasonable in relation to the economic value of the matter in question. *See*

3

In re *Albritton*, Case No. 04-480202-MBM (Bankr. E.D. Mi. 2006); *In re Atwell*, 148 B.R. 483 (Bankr. W.D. Ky. 1993).

The Trustee also objected to costs, indicating that the proper amount is $35.97.

At the hearing, Ms. Meade appeared and voiced her objections as well. The Court allowed the Debtors to file a written objection, which the Debtors did.

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157, 28 U.S.C. § 1334, and E.D. Mich. LR 83.50. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate).

The issues in this matter arise from Title 11 of the United States Code and do not involve any matter which limits this Court's jurisdiction as detailed by the United States Supreme Court in *Stern v. Marshall*, ---- U.S. ----, 131 S. Ct. 2594, 2608, 180 L.Ed.2d 475 (2011), and later by the United States Supreme Court in *Executive Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165 (2014). *See also Waldman v. Stone*, 698 F.3d 910 (6th Cir. 2012).

## APPLICABLE LAW

11 U.S.C. § 330(a)(3) provides, in relevant part:

> In determining the amount of reasonable compensation to be awarded . . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including–
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D) whether the services where performed within a reasonable amount of time commensurate with the complexity, importance and nature of the problem, issue, or task addressed;

4

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(4) prohibits the Court from allowing compensation for:

(i) unnecessary duplication of services; or

(ii) services that were not–

(I) reasonably likely to benefit the debtor's estate; or

(II) necessary to the administration of the case.

The lodestar method is to be utilized in awarding fees under Section 330. *Boddy v. United States Bankruptcy Court, Western District of Kentucky (In re Boddy)*, 950 F.2d 334 (6th Cir. 1991). The lodestar method of fee calculation multiplies the attorney's reasonable hourly rate by the number of hours reasonably expended. *Id*. at 337. The *Boddy* Court further held:

The bankruptcy court also may exercise its discretion to consider other factors such as the novelty and difficulty of the issues, the special skills of counsel, the results obtained, and whether the fee awarded is commensurate with fees for similar professional services in non-bankruptcy cases in the local area. In many cases, these factors will be duplicative if the court first determines the lodestar amount because the lodestar presumably subsumes all of these factors in its analysis of the *reasonable* hourly rate and the *reasonable* hours worked.

*Boddy*, 950 F.2d at 338 (citations omitted).

Per *Boddy*, a "court can legitimately take into account the typical compensation that is adequate for attorney fees in Chapter 13 cases, as long as it expressly discusses these factors in light of the reasonable hours actually worked and a reasonable hourly rate." *Id.*

The professional requesting compensation has the burden of proof regarding the application for compensation. *In re Sharp*, 367 B.R. 582, 585 (Bankr. E.D. Mich. 2007); *In re New Boston Coke*

*Corp.*, 299 B.R. 432 (Bankr. E.D. Mich. 2003).

Analysis

There is no objection to the hourly rate requested in the Application, so one component of *Boddy* is not in issue. Taken individually, it is difficult to fault each time entry in the Application. The Debtors' objection, however, describes the inefficiency of Debtors' counsel's process by detailing the continual nature of an email containing a one line request, and then the resulting responses. As stated by the Debtors:

> The preferred method of communication of the staff and Michelle Marrs is via email. Communicating via email can be an effective tool for documenting but can produce challenges and creates expense and waste. Instead of receiving an email with an outline of what was required from the court regarding a notice, an objection or what was required to purchase a car; I would receive a one line email correspondence. In turn, I would respond to the communication. The response would be followed up by Michelle or her assistant. The string of emails would continue with additional requests for information from Marrs & Terry. I would follow up with additional correspondence and questions as to what is causing these requests after the fact. This ridiculous string of time wasting billable hours became questionable at best. In the midst of these one line emails responses, I would call the office to have an associate inform me that Michelle was not available or in a meeting. The billable email string to get to an answer or resolution would continue. At times, it appeared as if the email communication method was a source of billing clients that could generate more revenue for Marrs & Terry, PLLC then working with a client and stating what information should be provided to resolve.

Earlier, the Court did not appreciate the argument that email communication is not productive. Put in the light of the Debtors' view, however, the Court sees some merit in the point. There is a time when a telephone call or face-to-face meeting is needed. Here, the Court agrees that the email communication is a less desirable method, especially considering the critical juncture of this case.

By July 2014, the Debtors' Plan was within five months of completion. The Debtors' August 13, 2014, proposed modification sought to excuse missed payments. By September 3, 2014, Debtors' counsel knew the proposed modification would have stiff opposition as seen in the

Trustee's objection. The October 14, 2014, oral argument and October 16, 2014, Opinion made it clear that the Debtors would not have the modification they wanted. A review of the time entries, however, reveals few actual conversations, but many emails. Accordingly, the Court sustains the Trustee's and the Debtors' objections as to the email issue.

By October 16, 2014, however, a larger issue arose. By that date, the Debtors' proposed plan modification was partially rejected by the Court. Most of the requested fees were already incurred by Debtors' counsel, but not yet billed or requested. As early as November 1, 2014, Debtors' counsel knew the proposed plan modification would not be approved and that significant fees were owed. If an application was filed in November 2014, the Trustee could have held some funds to pay those fees or could have delayed filing the December 12, 2014, motion to release the employer from making further payments. Moreover, examination of the entries in the Application does not reveal any communication - email or otherwise - advising the Debtors of the fees that may still be owed and advising to extend the time period to pay the Trustee. By failing to take any of these actions, Debtors' counsel placed their clients in a terrible position of being responsible for significant attorney fees and cutting any access to the Debtors to have those fees paid by the Chapter 13 Trustee either by December 2014, or over a longer period of time.

Some of the Debtors' objections, however, are not supported. While the Debtors may have hoped their Chapter 13 would be routine and with no need for additional legal services, that did not happen here. The 2016(b) Statement clearly details that Debtors' counsel would be entitled to additional fees if more services were needed. While the Court is aware some jurisdictions only allow a flat fee for Chapter 13 cases, this jurisdiction does allow such fees.

The Court also notes other issues raised by the Debtors, but because the Court's conclusion is that many of the fees should not be awarded, the Court will not address those issues. Instead, the Court, after careful consideration of the Application, allows fees for entries on August 13, 2014,

August 14, 2014, August 27, 2014, August 29, 2014, and September 3, 2014, related to incurring debt for an automobile because that service was needed and benefitted the Debtors, and was unrelated to plan modifications. Per the Court's calculation, those fees total $345.00. The Court also allows compensation of $175.00 for preparation of the Application and the reduced costs of $35.97. The balance of the fees requested are denied because the Debtors nor the estate received any value for those services and because Debtors' counsel placed the Debtors in an untenable position by failing to either request those fees earlier, have the Trustee reserve those fees, or request an extension of the Chapter 13 Plan to allow for payment of those fees. As the Debtors have already paid their counsel $12,231.86 and will be responsible to pay an additional $520.00 in fees and $35.97 in costs, the Court finds and concludes those amounts are full and fair compensation for the services rendered in this case.

The Court does not reach this conclusion lightly. As Debtors' counsel has the burden of proving that its fees are reasonable under Section 330, the Court concludes that burden has not been met. While counsel's math may be correct, counsel spent too much time on this case or, in light of Section 330(a)(3)(D), these services were not performed in "a reasonable amount of time commensurate with the complexity, importance and nature of the problem, issue, or task addressed." Moreover, counsel's actions from October 2014, precluded the Debtors from paying these fees through the Chapter 13 Plan. Counsel did not avail itself of many methods to ensure payment through the Chapter 13 Plan, but instead placed this burden on the Debtors after plan completion. The Court sees this course of action as unwarranted and will not award associated fees.

The Court acknowledges that some courts interpret *Boddy* to require a bankruptcy court to identify each specific hour that is disallowed. See *In re Williams*, 357 B.R. 434 (BAP 6th Cir. 2007). In *Williams*, the Sixth Circuit Bankruptcy Appellate Panel stated that "[i]f the court

disallows hours, it must explain which hours are disallowed and show why an award of these hours would be improper." *Id* at 439. In support, *Williams* cites *Norman v. Housing Authority of the City of Montgomery*, 836 F.2d 1292, 1304 (11th Cir. 1988), a non-bankruptcy case that has been questioned by *Loranger v. Stierham*, 10 F.3d 776, 783 (11th Cir. 1994). *Williams*, however, is not binding on this Court and *Boddy*, which is binding, does not require such a detailed analysis. Finally, even if *Williams* and like cases are followed, the Court has identified those time entries allowed, disallowed the rest, and given reasons for that disallowance.

Counsel for the Debtors is directed to prepare an Order consistent with this Opinion and as allowed by the presentment of orders procedures of this Court.

**Signed on March 16, 2015**

        **/s/ Daniel S. Opperman**
        **Daniel S. Opperman**
        **United States Bankruptcy Judge**